```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ORION PROPERTY GROUP, LLC, individually      MEMORANDUM & ORDER
and on behalf of all others                  19-CV-0044(JS)(GRB)
similarly situated,

                    Plaintiff,

        -against-

MARK HJELLE,

                    Defendant.
----------------------------------------X
APPEARANCES
For Plaintiffs:     David Slarskey, Esq.
                    Slarskey LLC
                    420 Lexington Avenue, Suite 2525
                    New York, New Yok 10170

                    Vincent Michael Serra, Esq.
                    Robbins Geller Rudman & Dowd, LLP
                    58 South Service Road, Suite 200
                    Melville, New York 11747

                    Christopher C. Gold, Esq., pro hac vice
                    Rachel L. Jensen, Esq., pro hac vice
                    Bradley Beall, Esq., pro hac vice
                    Robbins Geller Rudman & Dowd LLP
                    120 East Palmetto Park Road, Suite 500
                    Boca Raton, Florida 33432

                    Barbara C. Frankland, Esq.
                    Larkin E. Walsh, Esq.
                    Rex. A. Sharp, Esq.
                    Scott B. Goodger, Esq.
                    Ryan C. Hudson, Esq., pro hac vice
                    Rex A. Sharp, PA
                    5301 West 75th Street
                    Prairie Village, Kansas 66208

                    Brennan P. Fagan, Esq., pro hac vice
                    Fagan Emert & Davis, L.L.C.
                    730 New Hampshire, Suite 210
                    Lawrence, Kansas 66044
```

William Skepnek, Esq., pro hac vice
                    Skepnek Law Firm
                    1 Westwood Road
                    Lawrence, Kansas 66044

For Defendant:      William Edward Vita, Esq.
                    Westerman Ball Ederer Miller
                    & Sharfstein, LLP
                    1201 RXR Plaza
                    Uniondale, New York 11556

                    Kelly H. Foos, Esq., pro hac vice
                    Paul A. Williams, Esq., pro hac vice
                    Robert J. McCully, Esq., pro hac vice
                    Shook, Hardy & Bacon L.L.P.
                    2555 Grand Boulevard
                    Kansas City, Missouri 64108

SEYBERT, District Judge:

On December 29, 2017, plaintiff Orion Property Group, LLC ("Plaintiff"), on behalf of itself and all others similarly situated, commenced this putative nationwide civil Racketeering Influenced and Corrupt Organizations Act ("RICO") class action against defendant Mark Hjelle ("Defendant"), chief executive officer of CSC ServiceWorks, Inc. ("CSC"), in the United States District Court for the District of Kansas, alleging that Defendant orchestrated a fraudulent plan to steal 9.75 percent of gross receipts each month from CSC customers, including Plaintiff. On January 3, 2019, this case was transferred to the United States District Court for the Eastern District of New York. (Transfer Order, D.E. 49.)

Currently pending before the Court is Defendant's motion to stay this action pending approval of settlement proceedings in

a parallel action against CSC in <u>1050 West Columbia Condominium Association, et al. v. CSC ServiceWorks, Inc.</u>, No. 2019-CH-07319 (Circuit Court of Cook County, Illinois) (the "Illinois Action"). (Mot., D.E. 82; Vita Aff., D.E. 82-1, ¶ 3.) For the reasons set forth below, Defendant's Motion is GRANTED.

FACTUAL BACKGROUND[1]

I. <u>The Parties</u>

Defendant is a Maryland resident and an attorney who, on July 14, 2016, was appointed as CSC's Chief Executive Officer. (Am. Compl., D.E. 4, ¶¶ 7-8, 35.) CSC is a Delaware corporation headquartered in Plainview, New York. (Am. Compl. ¶ 35.) CSC leases space from owners of multi-family residential and commercial apartment buildings and other entities to install, maintain, and operate coin-operated and/or card-operated laundry equipment at more than 80,000 locations across the country. (Am. Compl. ¶¶ 3, 37, 42.) Under the lease agreements, CSC pays "rent" for the leased space most commonly in the form of a portion of the money collected from the equipment. (Am. Compl. ¶¶ 43, 45-49.) Many of the laundry leases at issue here are between putative class members and "Coinmach," a division of CSC. (Am. Compl. ¶¶ 3-4.)

Plaintiff is a limited liability company headquartered in Kansas that manages properties in more than twenty states across

---

[1] The following facts are drawn from the Amended Complaint.

the country.  (Am. Compl. ¶ 33.)  Plaintiff signed a laundry vending machine license agreement with CSC for vend-based laundry equipment at properties Plaintiff manages and also on behalf of another property Plaintiff operates as an agent.  (Am. Compl. ¶ 33.)

II. <u>Defendant's Alleged Fraudulent Scheme</u>

After his appointment to CEO, Defendant devised a scheme to increase CSC's revenues by imposing an "administrative fee" to siphon off 9.75 percent of gross collections under laundry leases (the "Administrative Fee"). (Am. Compl. ¶¶ 13, 57.)  Specifically, on May 17, 2017, Defendant wrote, signed, and mailed a letter to all CSC Customers, including Plaintiff, that misled CSC customers into believing that their lease agreements authorized CSC to charge the Administrative Fee (the "May 17 Letter").  (Am. Compl. ¶¶ 14-15.)  The May 17 Letter falsely stated that the Administrative Fee resulted in a "net gain to customers" and that CSC would "waive" other costs that it could have collected, but did not, under existing lease agreements.  (Am. Compl. ¶ 23.)  Further, the May 17 Letter provided for a purported "additional benefit" of up to $200 to cover events related to vandalism.  (Am. Compl. ¶ 16.)  In an effort to conceal his scheme, Defendant created a website dedicated to "fee transparency." (Am. Compl. ¶ 17.)  Thereafter, CSC customers' monthly statements and/or payments reflected the

4

improper 9.75 percent Administrative Fee deduction.  (Am. Compl. ¶¶ 61-62.)

PROCEDURAL HISTORY

I. This Action

Plaintiff initiated this putative class action on December 29, 2017 (Compl., D.E. 1) in the District of Kansas and filed an Amended Complaint on February 28, 2018 (see Am. Compl.). The Amended Complaint asserts a single cause of action against Defendant for a violation of RICO, 18 U.S.C. §§ 1961-68.  (See generally Am. Compl.)

On May 15, 2018, Defendant moved to dismiss the Amended Complaint arguing that the District of Kansas did not have personal jurisdiction over Defendant and that Plaintiff failed to state a claim for relief.  (See First Mot. to Dismiss, D.E. 18.)  On December 13, 2018, Judge Vratil dismissed Plaintiff's Amended Complaint on the ground that the District of Kansas did not have personal jurisdiction over Defendant.  (Dec. 13, 2018 Order, D.E. 46.)  On January 3, 2019, this case was transferred to the United States District Court for the Eastern District of New York to the undersigned.  (See, Transfer Order.)  On May 15, 2019, Defendant filed a second motion to dismiss before this Court (Second Mot. to Dismiss, D.E. 77), which was fully briefed by June 26, 2019.  (See Dismissal Opp., D.E. 79; Dismissal Reply,

D.E. 80.)  On October 3, 2019, Defendant filed this motion to stay. (Mot., D.E. 82.)

II. Similar State and Federal Class Actions

As detailed in the parties' briefs, this action is one of many lawsuits initiated in state and federal courts seeking to obtain redress from the allegedly improper Administrative Fee. (Stay Br., D.E. 82-2, at 2-3; Opp. Br., D.E. 83, at 7-12; Reply Br., D.E. 86, at 2.)  Among those actions are the Illinois Action, RBB2, LLC v. CSC ServiceWorks, Inc., No. 18-CV-0915, (E.D. Cal. 2018), initiated on July 6, 2018 (the "RBB2 Action")[2] and Summit Gardens Associates, et al. v. CSC ServiceWorks, Inc., No. 17-CV-2553 (N.D. Ohio 2017), removed to federal Court on December 7, 2017 (the "Summit Garden Action").[3]  The Illinois Action, the RBB2 Action, and the Summit Garden Action share the same national defense counsel with additional case-specific local and other counsel.  (Reply Br. at 2.)

Defendants aver that on or around March 2018, plaintiff's counsel in the RBB2 Action began to communicate with

---

[2] The RBB2 Action was voluntarily dismissed as a result of the Settlement in the Illinois Action.  (See RBB2 Action, No. 18-CV-0915 (E.D. Cal.), Notice of Settlement (D.E. 55), Stipulation of Dismissal (D.E. 56), and Dismissal (D.E. 57).)

[3] On October 25, 2019, the Summit Garden Court issued a stay Order pending the outcome of the parties' request for preliminary settlement approval or until the named plaintiffs opt out of the class represented in the Illinois Action. (Summit Garden Stay Order, D.E. 86-2.)

6

plaintiffs' counsel in similar cases to coordinate efforts to obtain a global resolution on behalf of a nationwide settlement class. (Reply Br. at 2.) As part of the coordination process, the parties submitted the matter to mediation before the Honorable James F. Holderman, the former Chief Judge of the Northern District of Illinois, now of JAMS, the alternative dispute resolution organization, in Chicago. (Stay Br. at 2; Reply Br. at 3.) The parties reached an agreement during mediation and decided to present the settlement for approval in the Illinois Action. (Reply Br. at 3.) Defendants assert that Plaintiff's counsel here chose to pursue their "own interests" and did not take part in the coordinated efforts to resolve claims against CSC on a nation-wide basis. (Reply. Br. at 3.)

On October 21, 2019, the parties to the Illinois Action filed a motion for preliminary approval of the class action settlement (the "Settlement"). (See Settlement Mot., D.E. 86-1, at ECF pp. 1-5.) The proposed Settlement terms define the class as "all Persons having existing leases with CSC on May 1, 2017, that were assessed and/or subject to one or more Administrative Fees, whether or not any fee has ever been collected, from May 2017 through the date of Preliminary Approval." (Settlement Br., D.E. 86-1, at ECF pp. 6-47, at 7, § III.A.) The Settlement also provides that "CSC, its officers, and its agents will be released from any and all claims relating to the collection of the

7

Administrative Fee . . . ." (Settlement Br. at 11, § III.F.) As of the date of this Memorandum and Order, the parties' request for preliminary approval of the Settlement remains pending.

DISCUSSION

I.  Legal Standard

"The Supreme Court has made clear that because a 'stay is an intrusion into the ordinary processes of administration and judicial review,' it is 'not a matter of right[;]' rather, it is an 'exercise of judicial discretion.'" Albert v. Blue Diamond Growers, 232 F. Supp. 3d 509, 512 (S.D.N.Y. 2017) (quoting Nken v. Holder, 556 U.S. 418, 427, 433, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009) and citing Maldonado-Padilla v. Holder, 651 F.3d 325, 327 (2d Cir. 2011)) (alteration in original).

However, "'[c]ourts routinely exercise this power and grant stays when a pending nationwide settlement could impact the claims [in the case before them.]'" In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig., 99 F. Supp. 3d 288, 315 (E.D.N.Y. 2015) (quoting Ali v. Wells Fargo Bank, N.A., No. 13-CV-0876, 2014 WL 819385, at *3 (W.D. Okla. Mar. 3, 2014)) (second alteration in original); see also Lindley v. Life Investors Ins. Co. of Am., Nos. 08-CV-0379 & 09-CV-0429, 2009 WL 3296498, at *3 (N.D. Okla. Oct. 9, 2009) (granting stay pending result of fairness hearing of class-wide settlement that "will have a significant impact on" the court's decision); In re RC2 Corp. Toy Lead Paint Prods. Liab.

Litigation, No. 07-CV-7184, MDL No. 1893, 2008 WL 548772, at *5 (N.D. Ill. Feb. 20, 2008).

When determining whether to grant a stay, Courts consider: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (quoting Volmar Distribs. v. N.Y. Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993)). A court must balance these factors on a "case-by-case determination, with the basic goal being to avoid prejudice." Id.

II. Analysis

Defendant primarily argues a stay is necessary because the "Settlement encompasses and releases the very claims asserted here." (Stay Br. at 4.) Specifically, Defendant argues that "the outcome of the [Settlement] depends on the same central issue—the legality of the Administrative Fee . . . [and] if the [Settlement] is approved, it will be res judicata as to this matter." (Stay Br. at 4.) In opposition, Plaintiff repeatedly argues that the "Court has no way of determining" whether the Settlement encompasses and releases the claims asserted here because Defendant did not attach a copy of the Settlement or its terms to

9

its motion, (Opp. Br. at 16) and urges the Court to decline to consider any evidence proffered by Defendant in reply (Opp. Br. at 21-22). In reply, Defendant attached the motion for preliminary Settlement approval, currently before the Court in the Illinois Action, that includes the Settlement terms. (See Settlement Mot.)

While Plaintiff is generally correct that "a party may not attempt to cure deficiencies in its moving papers by including new evidence in its reply to opposition papers" (Opp. Br. at 22), this argument misses the mark. By attaching the Settlement to the reply, Defendant did not present new theories or new evidence that would prohibit the Court from considering the Settlement. (Opp. Br. at 21-22.) To the contrary, Defendant's moving papers put Plaintiff on notice that the claims asserted here may be subsumed by a nationwide settlement in the Illinois Action. (See, e.g., Stay Br. at 1 (stating that the parties in the Illinois Action will be presenting a nationwide settlement "for preliminary and final approval that proposes a settlement class that will include [Plaintiff] and the class it seeks to represent here—namely, all persons and entities that were assessed an administrative fee by CSC . . . and releases all claims arising out of or related to the fee"); see also Vita Aff., ¶¶ 2-3.) Accordingly, the Settlement, although submitted in reply, does not cure a deficiency in the moving papers but instead serves to provide a more detailed picture of the proposed Settlement.

In any event, the Settlement clearly encompasses Plaintiff's claims--a fact that weighs in favor of a stay. The Amended Complaint asserts a RICO claim against Defendant, CSC's CEO, and defines the purported class as including "[a]ll persons, including entities, having contracts with CSC who have been subject to a 9.75% 'administrative fee.'" (Am. Compl. ¶ 68.) The proposed Settlement defines the class as "all Persons having existing leases with CSC on May 1, 2017, that were assessed and/or subject to one or more Administrative Fees,[4] whether or not any fee has ever been collected, from May 2017 through the date of Preliminary Approval." (Settlement Mot. at 7, § III.A.) The proposed Settlement also provides that "CSC, its officers, and its agents will be released from any and all claims relating to the collection of the Administrative Fee . . . ." (Settlement Br. at 11, § III.F.) Thus, if approved, the Settlement will likely subsume and preclude Plaintiff's claims here. See Readick v. Avis Budget Grp., Inc., No. 12-CV-3988, 2014 WL 1683799, at *3 (S.D.N.Y. Apr. 28, 2014) (finding plaintiff's right to proceed with a case "mitigated by the fact that certification of a nationwide class in [a parallel action] would likely circumscribe [p]laintiff's ability to prosecute this action.").

---

[4] The Settlement discusses and details the "Administrative Fee" in Section II.A. (Settlement Br., at 2.)

In opposition, Plaintiff also argues that it will be prejudiced by a stay because this action was the "first-filed by two years" prior to the Illinois Action. (Opp. Br. at 17.) Here, however, the Court may "enter a stay pending the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed." Lasala v. Needham & Co., 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005). Further, although this action may have been initiated prior to the Illinois Action, the Court finds that a limited stay favors judicial economy and will not prejudice Plaintiff. Indeed, the Illinois Action is closer to final resolution while this action is in its infancy: a motion to dismiss is fully briefed and pending and the parties have not yet started discovery. Cf. In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig., 99 F. Supp. 3d 288, 316 (E.D.N.Y. 2015) (declining to stay federal action pending approval of a preliminary nationwide class action settlement in a state court action where the parties engaged in two years of "extensive discovery and motion practice" before the federal court). Moreover, the Court finds that a stay will not prejudice Plaintiff because "[i]f the Settlement Agreement is not approved, Plaintiff[ ] can move to lift the stay and continue to pursue [its] claims in this case." Albert, 232 F. Supp. 3d at 513.

Plaintiff further argues against a stay because (1) the Settlement does not address Plaintiff's claims against Defendant,

as opposed to CSC, and (2) this action involves federal RICO claims and the Illinois Action involves breach of contract claims. (Opp. Br. at 10 n.4, 14, 17.) However, this argument ignores "practical reasons for staying this action, including that" the Settlement will likely have res judicata effect on Plaintiff's claims, regardless of whether Plaintiff's RICO claim is presented in the Illinois Action. Readnick, 2014 WL 1683799, at *4. Indeed, "[t]he Second Circuit has held that 'class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct.'" Albert, 232 F. Supp. 3d at 512 (quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 107 (2d Cir. 2005)); TBK Partners Ltd. v. W. Union Corp., 675 F.2d 456, 460 (2d Cir. 1982) ("[A] court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.").

The fact remains that the same "factual predicate" that underlies this action underlies the Illinois Action: the alleged improper Administrative Fee that CSC charged its customers. Thus, where, as here, "claims arise from the same 'nucleus of facts' or there exists 'significant overlap,' . . . a stay is warranted." Bahl v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.,

No. 14-CV-4020, 2018 WL 4861390, at *3 (E.D.N.Y. Sept. 28, 2018) (quoting Fried v. Lehman Bros. Real Estate Assocs. III, L.P., No. 11-CV-4141, 2012 WL 252139, at *5 (S.D.N.Y. Jan. 25, 2012) ("There is significant overlap between this lawsuit and the lawsuit on appeal, both legally and factually, which is a solid ground upon which to issue a stay.") (collecting cases).

The remaining Kappel factors tip in favor of a stay. As stated, Plaintiff's claims are encompassed by the proposed Settlement and a stay is therefore in the interest of judicial economy. As such, "proceeding with this case while a potential nationwide settlement that encompasses Plaintiff['s] claims is pending would cause the parties to expend considerable resources conducting discovery and briefing motions that may be unnecessary. Such expense would unduly burden [Defendant] as well as this Court." Albert, 232 F. Supp. 3d at 513. The Court's interests will best "be served by granting the stay since it will 'minimize the possibility of conflicts between different courts.'" Bahl, 2018 WL 4861390, at *4 (citing McCracken v. Verisma Sys., Inc., No. 14-CV-6248, 2018 WL 4233703, at *4 (W.D.N.Y. Sept. 6, 2018)). Accordingly, a stay will promote the interests of the Court, Defendant, persons not parties to this action, and the public, and will not unfairly prejudice Plaintiff.

As a final point, Plaintiff repeatedly asserts that a stay is unwarranted because, for example, the Settlement was

14

negotiated "secretly, under a cloud of apparent collusive conduct, with a deliberate effort to short circuit" federal class actions, (Opp. Br. at 17), Defendant is "forum shopping" (Opp. Br. at 17), Defendant is avoiding discovery (Opp. Br. at 19), and the "Settlement does not adequately" protect Plaintiff's interests (see Opp. Br. at 18).  (See also Opp. Br. at 6 ("in light of the facts and circumstances pointing to collusive efforts by CSC and [Defendant] here with a friendly plaintiff negotiating a state court settlement, the Court should in any event permit this action to proceed"); Opp. Br. at 12 (stating that Defendant found "a favorable adversary willing to settle claims surreptitiously, and attempting to slip the settlement through a state court proceeding to circumvent a previously-filed federal action").)

These arguments read more like objections to a proposed settlement rather than arguments raised in opposition to a stay. The Court agrees with Defendant that "to the extent Plaintiff has any disagreements with the [S]ettlement in substance or procedure, it can choose to remain in the class and bring those objections to the court overseeing the National Class Settlement." (Stay Br. at 5.)

## CONCLUSION

For the foregoing reasons, Defendant's Motion (D.E. 82) is GRANTED and this case is STAYED for ninety (90) days. On or before April 15, 2020 the parties are DIRECTED to submit a joint

letter updating the Court on the status of the Illinois Action, including the outcome of the proposed Settlement. The Court will then determine whether to extend the stay.

In light of the stay, the Court TERMINATES the pending motion to dismiss (D.E. 77) subject to reinstatement at such time as the stay is lifted and this case proceeds.

SO ORDERED.

     /s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     January  15 , 2020
           Central Islip, New York